## VERIFICATION AFFIDAVIT

STATE OF TEXAS
COUNTY OF DALLAS

Before me, the undersigned authority, on this day, personally appeared, Rachel Cole, who being duly sworn, deposes and states as follows:

### BACKGROUND

1. I am a Special Agent for the Internal Revenue Service Criminal Investigation (IRS-CI), duly appointed and acting according to law. I have been employed in this capacity since May of 2004. I have received specialized training in accounting and financial investigative techniques at the Federal Law Enforcement Training Center in Glynco, Georgia. My responsibilities include conducting investigations and participating in investigations that involve potential criminal violations of the Internal Revenue Code under Title 26 of the United States Code and related offenses, particularly as found in Title 18 and Title 31 of the United States Code.

2. I am currently assigned to the Southern Money Laundering Initiative Task Force located in Midlothian, Texas. Our mission is to identify and investigate possible money laundering and currency violations, specifically, violations of 18 U.S.C. §§ 1956, 1957, and 1960 and 31 U.S.C. §§ 5313, 5316, 5324, 5330, and 5331.

3. I make this verification for and on behalf of the United States of America. I have read the foregoing Complaint for Forfeiture against the Respondent $195,594.10 seized on September 28, 2012, from account #3700022365 in the name of "KBE Inc. dba Texas RV Outlet" held at Plains Capital Bank, and I believe each and every allegation in the complaint to be true. The information in this affidavit is based on public records, business records of the Texas Auto Outlet, Plains Capital Bank records, and sources as stated herein.

### LEGAL AUTHORITY FOR SEIZURE

4. Based on my training, experience, knowledge, and the information contained in the subsequent paragraphs, I believe the Respondent $195,594.10 is subject to forfeiture to the United States pursuant to 31 U.S.C. § 53 I 7(c), because the property was involved in a violation of 31 U.S.C. § 5324(b)(1) and (b)(2), or is traceable thereto.

Page | 1


EXHIBIT A

5. 31 U.S.C. § 5331 and 31 C.F.R. § 1010.330 require that any person who is engaged in a non-financial trade or business and who in the course of such trade or business receives more than $10,000 in coins or currency in one transaction (or two or more related transactions), shall file a report with respect to such transaction (or related transactions) with the Financial Crimes Enforcement Network (FinCEN). The report is made on FinCEN Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business.

6. 31 C.F.R. §1010.330(a) states that "person" for purposes of 31 U.S.C. § 5331 shall have the same meaning as under 26 U.S.C. § 7701(a)(1). That section defines "person" to mean and include "an individual, a trust, estate, partnership, association, company or corporation."

7. Forms 8300 are often used by law enforcement to uncover a wide variety of illegal activities, including narcotics trafficking and money laundering. They are also useful to the Internal Revenue Service in detecting cases of income tax evasion.

8. 31 U.S.C. § 5324(b)(1) prohibits a person for the purpose of evading the report requirements of 31 U.S.C. § 5331 or any regulation prescribed under that section from causing or attempting to cause a nonfinancial trade or business to fail to file a report required under § 5331 or any regulation prescribed under such section.

9. 31 U.S.C. § 5324(b)(2) prohibits a person for the purpose of evading the report requirements of 31 U.S.C. § 5331 or any regulation prescribed under that section from causing or attempting to cause a nonfinancial trade or business to file a report required under § 5331 that contains a material omission or misstatement of fact.

10. 31 U.S.C. § 5317(c) provides for the forfeiture of any property involved in a violation of § 5324, or any conspiracy to commit such violation, and any property traceable to any such violation or conspiracy. It is further provided that the property shall be forfeited in accordance with the procedures in money laundering cases under18 U.S.C. § 981(a)(1)(A).

11. 18 U.S.C. § 984 provides that in any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution, or precious metals, the government need not identify the specific property involved in the offense that is the basis of the forfeiture, nor shall it be a defense to forfeiture that the property involved in such offense has been removed and replaced by identical property. So, any identical property found in the same place or account as property involved in the forfeitable offense within one year from the date of the offense may be seized and forfeited.

## FACTS SUPPORTING THE FORFEITURE

12. On September 11, 2007, Articles of Incorporation for KBE, Inc. were filed with the Texas Secretary of State. Leonard S. Zak (Zak) was listed as a Director. On August 10, 2010, KBE, Inc. filed an Assumed Name Certificate with the Texas Secretary of State requesting to conduct business under Texas RV Outlet, with a principal office address of 5050 E. I-20 South, Willow Park, Texas, and stating that it was to operate in Parker County. Texas RV Outlet is licensed with the Texas Department of Motor Vehicles to sell recreational vehicles and travel trailers. On January 3, 2011, KBE, Inc. filed an Assumed Name Certificate with the Texas Secretary of State for Texas Auto Outlet (TAO), with a principal office address of 8200 W. Freeway, Ft. Worth, Texas, and stating that it was to operate in Tarrant County, Texas. TAO is licensed with the Texas Department of Motor Vehicles to sell motor vehicles, motorcycles, and travel trailers.

13. My investigation indicates that beginning in or before January 2011 and continuing through March 2012, Zak and other employees of TAO sold a number of vehicles to individuals who purchased these vehicles with amounts of cash often exceeding $10,000. By law, these large cash transactions would, of course, trigger the requirement that a FinCEN Form 8300 be filed.

14. On March 8, 2012, a search was conducted at the offices of TAO, pursuant to a federal search warrant. Financial records, sales files, and computers and electronic media, among other things, were seized as evidence. I spent numerous hours reviewing these records and materials and identified at least 32 vehicle sales by TAO between January 2011 and March 2012 that involved receipt of cash exceeding $10,000. As of approximately 2:00 p.m. on September 27, 2012, the Currency and Banking Retrieval System maintained by FINCEN shows that no Forms 8300 had been filed for 30 of these 32 vehicle sales in violation of 31 U.S.C. § 5324(b)(1).

15. On two of the 32 vehicle sales, however, TAO did in fact file Forms 8300, but in each case, TAO sold vehicles to an IRS-CI special agent acting in an authorized undercover capacity (UCA1), and they contained false information. In the first instance, on November 30, 2011, UCA1 along with a second IRS-CI undercover agent acting in an authorized undercover capacity (UCA2), visited TAO in Fort Worth, Texas, and purchased a vehicle for $16,500 in cash. UCA1 told Zak that he/she was

purchasing the vehicle but he/she did not want his/her name associated with the vehicle because he/she was involved in the narcotics business. UCA1 asked Zak to title the vehicle in the name of his/her partner, UCA2, to which Zak agreed. UCA1 also asked Zak to make sure that no "government forms" were filed with his/her name. However, a Form 8300 was subsequently filed by TAO in violation of 31 U.S.C. § 5324(b)(2) in that it falsely listed UCA2 as the provider of the currency.

16. In the second instance, on January 18, 2012, UCA1 and UCA2, again acting in an authorized undercover capacity, visited TAO and purchased another vehicle. Zak offered to complete the transaction just as he did the previous time, referring to the transaction conducted on November 30, 2011. UCA1 gave $19,500 cash to ZAK to complete the purchase. Sometime later, a Form 8300 was filed by TAO, but it again falsely listed UCA2 as the provider of the currency.

17. It appears from the discussion that the UCAs had with Zak about not wanting the "government forms" filed on the transactions that Zak was fully aware of the law and the requirements to file Form 8300 in those instances when his dealership receives more than $10,000 in currency. This is because he did not ask "what forms," and he subsequently filed Forms 8300 on both UCA transactions, albeit containing the false information about who gave him the cash. Further, during the execution of the March 8, 2012, search warrant, a folder on the desk of an employee who performed accounting functions was found with completed Forms 8300 on some of the 32 cash vehicle sales. A post-it note was attached to the first UCA purchase in November on which was handwritten, "Lenny, hold or mail?" In that same folder, there was a computer-generated report entitled, "Customer Cash Receipts Report," with a post-it note on it on which was handwritten, "IRS Currency Form." On this list were approximately 20 purported cash sales transactions that had occurred prior to November 30, 2011, some of which are not included among the 32 that I have identified in this affidavit.

18. As stated, 30 additional vehicle sales have been identified that each involved cash transactions greater than $10,000. My investigation has confirmed that no Forms 8300 were filed for any of these transactions.

19. Below is a chart of the 32 known reportable cash transactions at TAO:

|    | Date     | Name                    | Amount        |
|----|----------|-------------------------|---------------|
| 1  | 01/17/11 | Montoya, Alfred         | $ 10,522.31   |
| 2  | 01/24/11 | Emerson, Bryan          | $ 13,500.00   |
| 3  | 03/28/11 | Ahlefeld, Bobby         | $ 12,500.00   |
| 4  | 04/08/11 | Trunnell, Jack          | $ 36,221.00   |
| 5  | 04/16/11 | Selz, Scott             | $ 14,115.81   |
| 6  | 05/17/11 | Morris, Janice Kay      | $ 10,361.94   |
| 7  | 05/18/11 | Gaylord, Bob            | $ 28,949.75   |
| 8  | 06/02/11 | Hickmon, Kevion         | $ 10,100.00   |
| 9  | 06/03/11 | Shields, Freddie & Glenda | $ 15,685.00 |
| 10 | 06/15/11 | Good, Penny             | $ 23,000.00   |
| 11 | 06/21/11 | Zamaron, Marcos         | $ 13,000.00   |
| 12 | 06/22/11 | Carter, Delrix          | $ 18,000.00   |
| 13 | 07/01/11 | Lee, Raymond            | $ 13,000.00   |
| 14 | 07/05/11 | Lanier, Kenneth         | $ 13,662.28   |
| 15 | 07/26/11 | Gomez, Catarino         | $ 10,500.00   |
| 16 | 07/26/11 | Reid Auto               | $ 19,900.00   |
| 17 | 09/02/11 | Pigg, Danny L           | $ 27,100.00   |
| 18 | 09/08/11 | Kaifetz, Jerry          | $ 10,005.24   |
| 19 | 09/14/11 | Hernandez, Rosa         | $ 13,155.56   |
| 20 | 09/29/11 | Garner, Earle           | $ 10,040.00   |
| 21 | 10/18/11 | Sanders, William        | $ 16,804.31   |
| 22 | 11/10/11 | Van Campen, Jason       | $ 10,666.33   |
| 23 | 11/11/11 | Tangeman, Frank         | $ 19,000.00   |
| 24 | 11/30/11 | UCA2                    | $ 16,500.00   |
| 25 | 12/05/11 | Deak, Kay               | $ 10,700.00   |
| 26 | 12/10/11 | Williams, Clifford      | $ 9,000.00[1] |
| 27 | 12/17/11 | Wilson, Shalundrea      | $ 25,300.00   |
| 28 | 01/18/12 | UCA2                    | $ 19,500.00   |
| 29 | 02/07/12 | Keller, Sheila          | $ 10,095.41   |
| 30 | 02/11/12 | Shaw, Decrick           | $ 13,994.05   |
| 31 | 02/16/12 | Watson, Rodrick         | $ 13,424.00   |
| 32 | 02/20/12 | Locker, William         | $ 20,570.00   |
|    |          | **TOTAL**               | **$ 508,872.99** |

---

[1] Transaction 26 consisted of two currency deposits, one in the amount of $9,000 deposited in Plains Capital Bank account #3700022365, and an additional $1,300 in currency deposited into a second bank account.

Page | 5

20. On August 19, 2010, Zak opened commercial checking account #3700022365 at Plains Capital Bank (PCB) in Weatherford, Texas. This account was styled "KBE Inc. dba Texas RV Outlet." Beginning in January 2011, Zak used this bank account to deposit proceeds from TAO. I was able to match each of the 32 transactions above to corresponding deposits to PCB account #3700022365.

21. Of the $508,872.99 deposited to PCB account #3700022365 since January 2011, the "fungibility" provisions of 18 U.S.C. § 984 allowed the seizure on September 28, 2012, and forfeiture of the amount involved in the last 13 cash of the 32 cash transactions, $195,594.10, without the need for the government to have identified the exact funds. Those are:

|    | Date     | Name              | Amount       |
|----|----------|-------------------|--------------|
| 1  | 09/29/11 | Garner, Earle     | $ 10,040.00  |
| 2  | 10/18/11 | Sanders, William  | $ 16,804.31  |
| 3  | 11/10/11 | Van Campen, Jason | $ 10,666.33  |
| 4  | 11/11/11 | Tangeman, Frank   | $ 19,000.00  |
| 5  | 11/30/11 | UCA2              | $ 16,500.00  |
| 6  | 12/05/11 | Deak, Kay         | $ 10,700.00  |
| 7  | 12/10/11 | Williams, Clifford| $  9,000.00  |
| 8  | 12/17/11 | Wilson, Shalundrea| $ 25,300.00  |
| 9  | 01/18/12 | UCA2              | $ 19,500.00  |
| 10 | 02/07/12 | Keller, Sheila    | $ 10,095.41  |
| 11 | 02/11/12 | Shaw, Decrick     | $ 13,994.05  |
| 12 | 02/16/12 | Watson, Rodrick   | $ 13,424.00  |
| 13 | 02/20/12 | Locker, William   | $ 20,570.00  |
|    |          | **TOTAL**         | **$ 195,594.10** |

22. Based on my training and experience, I know that some individuals, particularly those that may be involved in illegal activities (i.e. drug trafficking and tax evasion) may generate large sums of cash in the course of their ventures. These same individuals are often well aware of the U.S. laws that require currency reporting by trades or businesses (as well as financial institutions) (Bank Secrecy Act). Accordingly, these individuals may seek to avoid having any such reports filed with the government by seeking out trades or businesses that will agree NOT to file such reports with the government. My investigation indicates that TAO, an automobile dealer, was one such trade or business.

## CONCLUSION

23. Based on my training, experience, and the information set out in preceding paragraphs, I believe the cash deposits totaling $508,872.99 into PCB account #3700022365 from January 2011 through February 2012 represent proceeds from 32 separate vehicle sales that were paid for in whole or in part with cash that exceeded $10,000. These cash transactions were either not reported or falsely reported, in violation of 31 U.S.C. § 5324(b). Of this $508,872.99, a total of $195,594.10 (the Respondent $195,594.10) remained fungible in PCB account #3700022365 as of the date it was seized pursuant to a federal seizure warrant issued on September 28, 2012, by the Honorable Jeffrey L. Cureton in accordance with 18 U.S.C. § 981(b), 31 U.S.C. § 5317(c), and 18 U.S.C. § 984.

_____
Rachel Cole, Special Agent
IRS Criminal Investigation

Subscribed and sworn before me this 17th day of May, 2013.

_____
Notary Public, State of Texas

JULIE LYNNETTE GARRIS
Notary Public, State of Texas
My Commission Expires
June 19, 2014

Page | 7